GAUDIN, Judge.
This is an appeal by a terminated employee denied severance pay because his termination was found to be “for cause” within terms of an employment contract. We reverse this trial judge finding and, for the following reason, remand to the 24th Judicial District Court for a resolution of this res nova issue:
Is an employee’s claim for severance pay privileged if his employer files for involuntary liquidation?
The employee-appellant, Walter C. Klink, and his employer, Cash Wholesale Drug Company, Inc., entered into a five-year contract on April 24, 1981. The agreement provides that Klink would be paid, upon separation of the parties, three months salary for each year of employment. The *54 agreement further states, in the termination section:
“In the event this agreement is terminated by employee’s death or by employer by cause, each party’s obligations under this agreement shall thereupon cease and terminate except for obligations accrued but undischarged to and including the date of such event. Employer may terminate employee ‘for cause’ only if employee is convicted of a felonious act of moral turpitude or is consistently, flagrantly and grossly negligent in the performance of his duties.” (Underlining provided.)
On October 16, 1984, Cash Wholesale Drug filed for involuntary liquidation and Richard B. Jacoves was appointed liquidator. Approximately two weeks later, Ja-coves terminated Klink because the company’s business had been suspended and there was no further need for Klink in the data processing department. At the time, Klink was one of only three remaining employees from a prior work force of at least 20 persons.
Denied severance pay by the liquidator, Klink then filed a rule in the liquidation proceedings to have his claim recognized and given a privilege.
The trial judge, concluding after hearing the rule that Klink’s termination was “for cause,” said that the continuation of Klink’s employment "... would have placed a greater burden on the corporation ...” and that the liquidator acted “... in the best interests of the corporation ... the services of Mr. Klink were no longer needed ... it was basically a business reason being made in order that the corporation wouldn’t be further drained ...”
Although the trial judge did add that there were “... probably secondary reasons ...” for Klink’s termination in that he was uncooperative and failed to produce requested records, the record and testimony firmly reflect the fact that Klink was severed only because the corporation could no longer afford to pay him.
Stephen Koppman, the corporation’s president, testified that although Klink's five-year contract specified his annual salary at $20,400.00, Klink was being paid $2,700.00 monthly at the time of his termination. Koppman stated unequivocally that he was familiar with the termination clause of the contract in question and that at no time did Klink do anything to authorize his being fired “for cause.”
Jacoves was asked if he had found it necessary to terminate Klink “... because of a lack of business and no business to be operated ...” His direct answer: “Yes.” Jacoves testified that at the time he was unaware of the employment agreement between Klink and the corporation.
Later, Jacoves was asked this question: “... in summation your testimony is that by the time you came on board, there were three employees, one of whom was Mr. Klink and you terminated him and one of the other employees because there was no more business and no more operation of the business to go on and you simply terminated these people because that was the end of the line?”
Jacoves’ answer: “Yes, sir.”
Still later while Jacoves was on the witness stand, he said that Klink “... was rather evasive, not factual, and when I would ask direct questions, I got evasive answers. He finally — we got the inventory.”
Even if Jacoves’ concern about the insufficiency of records and Klink’s supposed evasiveness were well-founded, this would not have constituted consistent, flagrant and gross negligence on Klink’s part as spelled out in and as required by the employment contract. Jacoves was with the corporation only two weeks before Klink was let go. Also, Klink was not convicted of any felonious act of moral turpitude, which is the only other reason this employee could have been terminated for cause.
We remand to the district court for the trial judge (1) to determine the amount of Klink's severance pay, (2) to decide if this claim should be afforded a privilege and (3) to consider Klink’s request for penalties *55 and attorney fees pursuant to LSA-R.S. 23:632.
’ Klink contends that LSA-C.C. arts. 3191 and 3214 justify the classification of severance pay as wages or salary, thereby bestowing on this claim a privilege. Appel-lee, on the other hand, suggests that Art. 3214 does not deal with severance pay but only with actual and earned wages. Art. 3214 reads:
“Although clerks, secretaries and other agents of that sort can not be included under the denomination of servants, yet a privilege is granted them for their salaries for the last year elapsed, and so much as has elapsed of the current year. This privilege, however, can not be enforced until after that of the furnishers of provisions.”
There are, apparently, no Louisiana appellate or Supreme Court opinions relating directly to the privilege question. As this issue is new, it is appropriate that the initial adjudication be made by the trial judge. Appellee is to bear costs of this appeal.
REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.